Michael Lee (WL 6353)
Lee Law PLLC
579 Fifth Avenue
14th Floor
New York, NY 10017
Telephone: (212) 621-8239
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| OLAPLEX, LLC and LIQWD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AC BEAUTY CORP.; AARON WEINGARTEN, both individually and d/b/a "ROSS ELECTRONICS;" "JOHN DOES" 1-10; and UNKNOWN ENTITIES 1-10; <br><br> Defendants. | CASE NO. <br><br><br> **COMPLAINT** |

Plaintiffs OLAPLEX, LLC (hereinafter "OL") and LIQWD, INC. (hereinafter "LI") (OL and LI are hereinafter collectively referred to as "Plaintiffs") by and through their attorneys of record, complaining of defendants ABC Corp.; Aaron Weingarten, both individually and doing business as "Ross Electronics"; "John Does" 1-10 and Unknown Entities 1-10 (hereinafter collectively referred to as "Defendants") hereby allege as follows:

## STATEMENT OF THE CASE

1.    Plaintiffs manufacture, distribute, and sell a professional hair care product that creates and reconnects bonds in the hair. Plaintiffs' kits are not sold to individuals but rather to licensed hair care professionals.

Specifically, Olaplex Hair Perfector No. 3 is a take-home product that is sold to consumers by their hairstylist, online at Olaplex.com, or in select high-end retail stores like Sephora and Nordstrom.

2.      Plaintiffs' products are sold in more than 80 countries around the world. Since its inception, Plaintiffs' products were an instant success and have revolutionized the hair industry. Leaders in the hair industry have even referred to them as "game changing," "revolutionary," and a "miracle product" that is the "holy grail of hair product[s]."

3.      Defendants are engaged in the unlawful enterprise of offering for sale and selling counterfeit versions of Plaintiffs' products utilizing unauthorized reproductions of Plaintiffs' registered trademarks and product codes on, and removing Plaintiffs' codes specifically its Quick Reader ("QR") codes and replacing them with new QR codes from product labels affixed to Defendants' products (the "Counterfeit Products").

4.      Plaintiffs' product codes help ensure that the consuming public receives only safe and genuine Olaplex-branded products and are critical to Plaintiffs' anti-counterfeiting and quality control efforts. Counterfeit Products, such as those sold by Defendants, do not include the QR codes that enable consumers and Plaintiffs to access information about genuine Olaplex products. In most cases, Plaintiffs have no way of knowing whether the Counterfeit Products were manufactured without a code or if Defendants subsequently decoded the Counterfeit Products and replaced Plaintiffs' original product labels with their own reproductions.

5.      These decoded Counterfeit Products are no longer traceable to the distributor who diverted the units from their authorized channels of trade, are sold outside of these authorized distribution channels, and are frequently commingled with other counterfeit beauty products.

6.     On information and belief, Defendants manufacture Counterfeit Products and label their Counterfeit Products without the codes and other anti-counterfeiting measures found on genuine Olaplex products. This significantly and detrimentally interferes with Plaintiffs' quality control and anti-counterfeiting efforts, in which the product codes play a vital role, and puts at risk the health and wellbeing of the consuming public.

7.     The consequences of these unauthorized products in the marketplace that have not undergone the strenuous quality control of Olaplex not only harm Olaplex and its goodwill but serves as a public health hazard to any unsuspecting user. Especially with sales on the Internet, many people get confused to think that these products are genuine but instead they pose the risk of serious harm.

8.     This action concerns the offer for sale, sale, and other distribution of merchandise bearing counterfeits and infringements of LI's federally registered trademarks in the United States. As described more fully below, Defendants are actively working together and have conspired knowingly and intentionally to distribute and sell counterfeit merchandise. By doing so, Defendants have willfully infringed LI's valuable trademarks, creating a strong likelihood of confusion among consumers who expect that merchandise bearing LI's trademarks will be genuine Olaplex product and causing both monetary and other irreparable injury to Plaintiffs. With the removal of such quality controls, Olaplex is unable to determine even if such product is authentic.

## PARTIES

9.     Plaintiff OL is a limited liability company organized and existing under the laws of the State of California, having its principal place of business at 1482 E. Valley Rd., Suite #701, Santa Barbara, California 93108.

10.     Plaintiff LI is a corporation organized and existing under the laws of the State of California, having its principal place of business at 1482 E. Valley Rd., Suite #701, Santa Barbara, California 93108. LI is the record owner of the trademarks at issue in the instant action and licenses such trademarks exclusively to its affiliate OL for use and sub- licensing in connection with OL's business.

11.     Upon information and belief, ABC Beauty Corp ("ABC") is a New York corporation with its principle place of business located at 123 Grove Avenue, Suite 101, Cedarhurst, NY 11516.

12.     Upon information and belief, defendant Aaron Weingarten ("Weingarten") is the President / Owner of ABC and therefore has the right and ability to control the actions of the corporate defendant. At this time, Plaintiffs are not aware of Weingarten's place of residence and will supplement this Complaint upon further information.

13.     Upon information and belief, ABC and Weingarten all do business under the fictitious business name, "Ross Electronics" which is not authorized to do business in any State. The clandestine operations of Defendants are more evidence of their willful conduct.

14.     The identities of "John Does" 1-10 and Unknown Entities 1-10 are not currently known to Plaintiffs. Upon information and belief, they are associated with Defendants and have contributed to Defendants' unlawful

activities. Plaintiffs will use its best efforts to identify these "John Does" and Unknown Entities, and upon further knowledge and investigation, Plaintiffs will amend its pleadings accordingly.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the federal trademark claims asserted in this action under 15 U.S.C. § 1121, and 28 U.S.C. § 1331 and 28 U.S.C. § 1338. This Court has supplemental subject matter jurisdiction over state law claims pursuant to 28 U.S. C. § 1367(a) in that the state law claims form part of the same case or controversy as the federal claims.

16.     Defendants are subject to the Court's jurisdiction because they have committed the acts complained of herein in this District, do business in this District and/or reside in this District.

17.     Defendants are subject to the jurisdiction of this Court pursuant to and in accordance with Rule 4 of the Federal Rules of Civil Procedure.

18.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTUAL ALLEGATIONS

Plaintiffs and the Olaplex Trademarks

19.     Since 2014, Plaintiffs have extensively and exclusively sold goods bearing the **OLAPLEX®** trademark throughout the United States. Plaintiffs have the exclusive right to use and reproduce the **OLAPLEX®** trademark. As a result of Plaintiffs' extensive marketing and sales of products bearing the **OLAPLEX®** trademark, the **OLAPLEX®** trademark

has acquired considerable value and is well known to the consuming public and trade as identifying and distinguishing Olaplex products.

20.     Rights to the **OLAPLEX®** trademark are evidenced in trademark registrations and applications throughout the world, including by the United States Patent and Trademark Office under Registration No. 4,553,436. In addition, Plaintiffs own U.S. Trademark Registration No. 4,557,585 for **BOND MULTIPLIER®** and U.S. Trademark Registration No. 4,682,909 for **BOND PERFECTOR®** (collectively, the "Olaplex Trademarks"), two of its top-selling hair products the Olaplex Trademarks are valid and subsisting.

21.     Plaintiffs' products are sold through a carefully curated network of salons and distributors around the world, as well as on Plaintiffs' own website www.olaplex.com and through select retail partners such as Sephora.

22.     Plaintiffs exercise strict quality control over the production, bottling, packaging, and distribution of the products sold under its **OLAPLEX®** trademark. Plaintiffs mark each unit with a product code used as a quality assurance, anti-counterfeiting, and anti-theft measure.

23.     In addition, Plaintiffs use QR codes on the labels. Plaintiffs' QR codes store important information about their products and provide consumers the ability to scan the QR code on a smartphone and access Plaintiffs' website for additional information about the product, including the opportunity to purchase more products online or learn of brick-and-mortar locations where they may be available for purchase.

24.     These codes are particularly important for maintaining the integrity and guaranteeing the safety of Plaintiffs' products. For example, the code permits Plaintiffs to take corrective action in the event a product

defect should arise and to protect the market from counterfeit products. Plaintiffs' codes indicate, among other things, the date the product was packaged and provides traceability from the moment the unit is produced to the point of consumer purchase.

25.    Olaplex products lacking a code, or including an incorrect code, may be stolen or counterfeit, and, even those originally manufactured by Plaintiffs, are not subject to the same ongoing quality assurances as genuine product intended for sale in the U.S. The sale of products from which such codes have been removed – also known in the industry as "decoded" products – violates Section 32(1) and 43(a) of the Lanham Act.

26.    In some cases, codes are removed from Olaplex products with chemicals, in a manner that does not damage the product packaging. Such chemically decoded products are virtually indistinguishable from counterfeits with no code. Decoded products are generally sold by distributors who are not authorized to sell these products in the United States and are frequently found in mixed shipments with other counterfeit products.

27.    On information and belief, genuine products are decoded to hide the fact that they are stolen or counterfeit product, or to conceal the identity of the seller who is diverting the product outside authorized distribution channels.

Defendants' Unauthorized Activities

28.    On information and belief, Defendants source, market, advertise, offer for sale, and/or sell in interstate commerce merchandise bearing counterfeits and infringements of the Olaplex Trademarks.

29.   As part of their ongoing illegal enterprise, Defendants purchase and then sell merchandise bearing counterfeits and infringements of the Olaplex Trademarks.

30.   On or about August 22, 2018, Plaintiffs discovered product alleged to be "Olaplex Hair Perfector No. 3" for sale by a third-party identified as "Top Rated Seller" on the website, www.Walmart.com (the "Listing")

31.   Subsequently, a purchase from the Listing confirmed that the Listing was offering for sale and selling Counterfeit Products.  Plaintiffs confirmed that the product bears several counterfeits and infringements of the Olaplex Trademarks (the "Purchase").

32.   On or about August 29, 2018, Plaintiffs discovered product alleged to be "Olaplex Hair Perfector No. 3 Repairing Treatment" for sale by a third-party identified as "Buyers Preferred" on the website, www.eBay.com (the "Second Listing")

33.   Subsequently, a purchase from the Second Listing confirmed that the Second Listing was offering for sale and selling Counterfeit Products.  Plaintiffs confirmed that the product bears several counterfeits and infringements of the Olaplex Trademarks (the "Second Purchase").

34.   As a result of this unauthorized activity, Plaintiffs filed suit against the parties that distributed the First and Second Purchases. On February 1, 2019, Plaintiff filed the case captioned, *Olaplex, LLC et al. v. DJ Direct Inc*., *et al*., 19-cv-00631(MKB)(SJB). ("DJ Direct Lawsuit")

35.   During the course of the DJ Direct Lawsuit, those defendants produced evidence and other documentation that evidence that its only source for its Counterfeit Product was Defendants. Specifically, an invoice was produced showing a large sale of product from Defendants to the DJ

Direct Lawsuit defendants. A copy of that invoice is hereto attached as **Exhibit A** and incorporated herein by reference.

36.    The Counterfeit Product distributed by Defendants is particularly worrisome as Plaintiff's QR codes were cut off the bottles of product and replaced with a non-functional QR code that was sloppily pasted to the bottle.

37.    Clearly Defendants conduct was willful as these actions were very deliberate and made with the intent to not be able to determine the source of Defendants' illicit product.

38.    Upon information and belief, Defendants are working in concert to purchase, alter, offer for sale and sell Counterfeit Product. The full extent of Defendants' illegal activities is not known at this time but the located Counterfeit Products is just the tip of the iceberg of Defendants' illegal activities concerning the Olaplex Trademarks.

39.    Defendants are not authorized and never have been authorized by Plaintiffs to alter, produce, manufacture, distribute, advertise, offer for sale, and/or sell merchandise bearing the Olaplex Trademarks, or any variations thereof.

40.    On information and belief, Defendants source, market, advertise, offer for sale, and/or sell Counterfeit Products in interstate commerce. The Counterfeit Products sold by Defendants bear counterfeit and confusingly similar imitations of the Olaplex Trademarks in a manner likely to be confused with genuine Olaplex products.

41.    On information and belief, Defendants are further unlawfully engaged in the business of removing and/or materially altering codes and other quality control and anti-counterfeiting devices from Olaplex products and introducing them into interstate commerce.

42.     In addition, the absence of the authentic QR code from Defendants' Counterfeit Products prevents consumers from accessing the Olaplex website by scanning the QR code with a smartphone. By preventing purchasers from accessing the Olaplex website with the QR code, where they can inquire about the products, obtain additional information, or potentially purchase directly from Olaplex, Defendants are intentionally interfering with Olaplex's efforts related to the QR code.

43.     Defendants' omission of Plaintiffs' product code from their counterfeit labels significantly interferes with Plaintiffs' anti-counterfeiting, quality control, and anti-theft programs by hindering their ability to trace the products, thereby potentially endangering the public by preventing Plaintiffs from identifying fakes, resolving quality problems, and recalling defective products. Moreover, the absence of the code and/or mutilation of the packaging are each in and of themselves material differences from the authorized products that are distributed by Plaintiffs. The Counterfeit Products are therefore infringing under U.S. trademark law.

44.     Defendants are not authorized and never have been authorized by Plaintiffs to produce, manufacture, distribute, advertise, offer for sale, and/or sell merchandise bearing the Olaplex Trademarks, or any variations thereof.

45.     Defendants' decoded Counterfeit Products are materially different from Plaintiffs' genuine goods but are passed off to the public as genuine products.

46.     Defendants' Counterfeit Products are likely to deceive, confuse and mislead purchasers and prospective purchasers into believing that these unlicensed and unauthorized products are authorized by Plaintiffs. Purchasers and prospective purchasers viewing Defendants' Counterfeit

Products and perceiving a defect, lack of quality, or any other irregularity are likely to attribute them mistakenly to Plaintiffs.

47.     Defendants are not associated or connected with Plaintiffs, or licensed, authorized, sponsored, endorsed, or approved by Plaintiffs in any way.

48.     The likelihood of confusion, mistake, and deception engendered by Defendants' misappropriation of the Olaplex Trademarks is causing irreparable harm to the goodwill symbolized by the Olaplex Trademarks and the reputation for quality that said marks embody, as well as the efficacy of Plaintiffs' anti-counterfeiting efforts.

49.     On information and belief, Defendants knowingly, willfully, intentionally, and maliciously adopted and used confusingly similar and/or substantially indistinguishable imitations of the Olaplex Trademarks.

50.     Due to the nature of the product at issue here (i.e., a topical hair product), Defendants' sale of the Counterfeit Products poses a serious risk to public health and safety. Thus, Defendants' actions are causing irreparable harm to Plaintiffs and the public by threatening consumer welfare and creating consumer confusion.

51.     Defendants' conduct is intentionally fraudulent, malicious, willful and wanton.

52.     Unless enjoined by this Court, Defendants intend to continue their course of conduct and will wrongfully use, infringe upon and otherwise profit from the Olaplex Trademarks, and cause injury to Plaintiffs' reputation and business interests.

53.     As a direct result of the acts of Defendants alleged herein, Plaintiffs have suffered irreparable damage and have sustained lost profits.

Plaintiffs will continue to suffer irreparable damage and sustain a loss in profits until Defendants' actions alleged above are enjoined by this Court.

### FIRST CLAIM FOR RELIEF:
### TRADEMARK COUNTERFEITING
### (15 U.S.C. § 1114)

54.     Plaintiffs repeat and re-allege the allegations in the preceding paragraphs of this Complaint.

55.     Defendants have used spurious designations that are identical with, or substantially indistinguishable from, the Olaplex Trademarks on goods covered by registrations for the Olaplex Trademarks.

56.     Defendants have intentionally used these spurious designations, knowing they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale, and distribution of goods.

57.     Defendants' use of the Olaplex Trademarks to advertise, promote, offer for sale, distribute and sell goods bearing counterfeits was and is without the consent of Plaintiffs.

58.     Defendants' unauthorized use of the Olaplex Trademarks on and in connection with their advertisement, promotion, sale, offering for sale, and distribution of goods through e-mail and the Internet constitutes Defendants' use of the Olaplex Trademarks in commerce.

59.     Defendants' unauthorized use of the Olaplex Trademarks as set forth above is likely to: (a) cause confusion, mistake, and deception; (b) cause the public to believe that Defendants' goods are the same as Plaintiffs' goods and/or that they are authorized, sponsored, or approved by Plaintiffs or that they are affiliated, connected, or associated with or in some way related to Plaintiffs; and (c) enable Defendants to unfairly benefit from Plaintiffs' advertising and promotion and profit from the reputation of

Plaintiffs and the Olaplex Trademarks, all to the substantial and irreparable injury of the public, Plaintiffs, and the Olaplex Trademarks and the substantial goodwill represented thereby.

60.     Defendants' acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

61.     By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at Plaintiffs' election, an amount representing three (3) times Plaintiffs' damages and/or Defendants' illicit profits; and (b) reasonable attorneys' fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF:
## TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1114)

62.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 53 of this Complaint.

63.     Based on Plaintiffs' extensive advertising under the Olaplex Trademarks, its extensive sales and the wide popularity of Olaplex products, the Olaplex Trademarks have acquired secondary meaning such that any product and advertisement bearing such trademarks is immediately associated by purchaser and the public as being a product and affiliate of Plaintiffs.

64.     Defendants' activities constitute Defendants' use in commerce of the Olaplex Trademarks. Defendants use the Olaplex Trademarks in connection with Defendants' sale, offers for sale, distribution, promotion, and advertisement of their goods bearing infringements and/or counterfeits

of the Olaplex Trademarks.

65.     Defendants have used the Olaplex Trademarks, knowing that they are the exclusive property of Plaintiffs, in connection with their sale, offers for sale, distribution, promotion, and advertisement of their goods bearing counterfeits or infringements of the Olaplex Trademarks.

66.     Defendants' activities create the false and misleading impression that Defendants are sanctioned, assigned, or authorized by Plaintiffs to use the Olaplex Trademarks to advertise, manufacture, distribute, offer for sale, or sell goods bearing the Olaplex Trademarks when Defendants are not so authorized.

67.     Defendants engage in the aforementioned activity with the intent to confuse and deceive the public into believing that they and the goods they sell are in some way sponsored, affiliated, or associated with Plaintiffs, when in fact they are not.

68.     Defendants' use of the Olaplex Trademarks has been without the consent of Plaintiffs, is likely to cause confusion and mistake in the minds of the public and, in particular, tends to and does falsely create the impression that the goods advertised, promoted, distributed, and sold by Defendants are warranted, authorized, sponsored, or approved by Plaintiffs when, in fact, they are not.

69.     Defendants' unauthorized use of the Olaplex Trademarks has resulted in Defendants unfairly benefiting from Plaintiffs' advertising and promotion, and profiting from the reputation of Plaintiffs and the Olaplex Trademarks, to the substantial and irreparable injury of the public, Plaintiffs, and the Olaplex Trademarks and the substantial goodwill represented thereby.

70.     Defendants' acts constitute willful trademark infringement in

violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

71.     By Reason of the foregoing, Defendants are liable to Plaintiffs for: (a) an amount representing three (3) times Plaintiffs' damages and/or Defendants' illicit profits; and (b) reasonable attorneys' fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

## THIRD CLAIM FOR RELIEF:
### FEDERAL TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))

72.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 though 53 of this Complaint.

73.     Defendants' use of the Olaplex Trademarks or marks confusingly similar thereto in order to sell their products constitutes Defendants' commercial use in commerce of the Olaplex Trademarks.

74.     The Olaplex Trademarks are world famous and distinctive. They achieved such status long prior to Defendants' activities complained of herein.

75.     Defendants' use of the Olaplex Trademarks on the Internet to advertise unauthorized merchandise constitutes tarnishment of the Olaplex Trademarks.

76.     Plaintiffs are suffering and will continue to suffer irreparable harm from Defendants' dilutive activities.

77.     Defendants' acts as aforesaid are diluting the distinctive quality of the Olaplex Trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

78.     Defendants have intentionally and willfully appropriated the Olaplex Trademarks and traded on Plaintiffs' reputation.

79.     Defendants' wrongful acts of dilution will continue unless enjoined by this Court.

**FOURTH CLAIM FOR RELIEF:**
**UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN**
**& FALSE DESCRIPTION**
**(15 U.S.C. § 1125(a))**

80.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 53 of this Complaint.

81.     In connection with Defendants' advertisement, promotion, distribution, offers of sales, and sales of their goods, Defendants have used the Olaplex Trademarks in commerce.

82.     In connection with Defendants' advertisement, promotion, distribution, offers of sales, and sales of their goods, Defendants have affixed, applied and/or used false designations of origin and false and misleading descriptions and representations, including the Olaplex Trademarks, which tend falsely to describe the origin, sponsorship, association, or approval by Plaintiffs of the goods Defendants sell.

83.     Defendants have used the Olaplex Trademarks with full knowledge of the falsity of such designations of origin, descriptions, and representations, all to the detriment of Plaintiffs.

84.     Defendants' use of the Olaplex Trademarks on the Internet and on their goods bearing counterfeits and/or infringements of the Olaplex Trademarks constitutes false descriptions and representations tending falsely to describe or represent Defendants and their products as being authorized, sponsored, affiliated, or associated with Plaintiffs.

85.     Defendants have used the Olaplex Trademarks on the Internet

and on their goods with the express intent to cause confusion and mistake, to deceive and mislead the public, to trade upon the reputation of Plaintiffs and to improperly appropriate to themselves the valuable trademark rights of Plaintiffs. Defendants' acts constitute unfair competition under federal law.

86.    Defendants' acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent their products as those of Plaintiffs in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). These acts constitute unfair competition.

## FIFTH CLAIM FOR RELIEF:
### UNFAIR AND DECEPTIVE BUSINESS PRACTICES
### (N.Y. Gen. Bus. L. § 349)

87.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 53 of this Complaint.

88.    The wrongful conduct of Defendants constitutes materially misleading and deceptive trade practices under New York General Business Law § 349.

89.    This wrongful conduct was consumer-oriented within the meaning of Section 349 as consumers are unable to determine the source and authentic of the Counterfeit Products and therefore harm the general consuming public.

90.    Because of this deceptive conduct, Plaintiffs have been and will continue to be damaged both monetarily and in ways impossible to remedy

through monetary judgment.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request that the Court order the following relief:

1. That the Court enter an injunction ordering that Defendants, their agents, servants, employees, and all other persons in privity or acting in concert with them be enjoined and restrained from:

    a. using any counterfeit or infringement of the Olaplex Trademarks to identify any goods not authorized by Plaintiffs;

    b. counterfeiting or infringing the Olaplex Trademarks by importing, manufacturing, distributing, selling, offering for sale, advertising, promoting, displaying any products bearing any simulation, reproduction, counterfeit, or copy of the Olaplex Trademarks;

    c. using any simulation, reproduction, counterfeit, or copy of the Olaplex Trademarks in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Olaplex products, or to any goods sold, manufactured, sponsored or approved by, or connected with Olaplex products,

    d. making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any services provided, products manufactured, distributed, sold or offered for sale, or rented by Defendants are in any way associated or connected with Olaplex products;

    e.  engaging in any other conduct constituting an infringement of the Olaplex Trademarks, of Olaplex products' rights in, or to use or to exploit, said trademark, or constituting any weakening of Olaplex products' name, reputation and goodwill.

2.    Defendants be ordered to recall all products bearing the Olaplex Trademarks or any other indicia confusingly or substantially similar thereof, which have been shipped by Defendants or under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendants.

3.    Defendants be ordered to deliver for impoundment and destruction all merchandise, bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional materials, stationery and/or other materials in the possession, custody, or under the control of Defendants which are found to adopt or infringe any of the Olaplex Trademarks, or which otherwise unfairly compete with Plaintiffs and their products and services.

4.    Defendants be ordered to file with this Court and serve upon Plaintiffs, within thirty (30) days of the entry of the injunction prayed for herein, a report in writing under oath and setting forth in detail the form and manner in which Defendants have complied with said permanent injunction, pursuant to 15 U.S.C. 1116(a);

5.    Defendants be ordered to disclose their supplier(s) of the Counterfeit Products and provide all documents, correspondence, receipts, and/or invoices associated with the purchase of the Counterfeit Products.

6.    Plaintiffs be awarded all damages caused by the acts forming the basis of this Complaint.

7.     Plaintiffs be awarded such damages and profits Plaintiffs have sustained as a consequence of Defendants' counterfeiting and infringement of the Olaplex Trademarks and to account for all gains, profits, and advantages derived by Defendants from the sale of their counterfeit and infringing merchandise bearing the Olaplex Trademarks and that the award to Plaintiffs be trebled as provided for under 15 U.S.C. § 1117; alternatively, that Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $2,000,000 for each trademark that Defendants have willfully counterfeited and infringed.

8.     Defendants be required to pay to Plaintiffs the costs of this action and Plaintiffs' reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a) and the state statutes cited in this Complaint.

9.     Plaintiffs be awarded their actual damages and attorneys' fees pursuant to N.Y. Gen. Bus. L. § 349.

10.    Based on Defendants' willful and deliberate infringement of the Olaplex Trademarks, and to deter such conduct in the future, Plaintiffs be awarded punitive damages.

11.    Defendants be required to pay pre-judgment interest on all damages and profits awards.

12.    That this Court retain jurisdiction of this action for the purpose of enabling Plaintiffs to apply to this Court at any time for such further orders and interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

13.    That pursuant to 11 U.S.C. § 523(a)(6), Defendants be prohibited from a discharge under 11 U.S.C. § 727 for malicious, willful, and fraudulent injury to Plaintiffs.

14.    Plaintiffs have such other and further relief as this Court may deem just and equitable.

**LEE LAW PLLC**

Dated: June 3, 2019

Michael Lee (WL6353)
Lee Law PLLC
579 Fifth Avenue
14th Floor
New York, NY 10017
Telephone: (212) 621-8239

Attorneys for Plaintiffs

# **EXHIBIT A**

# INVOICE

## Ross Electronics LLC

123 Grove Ave
#101
Cedarhurst NY - 11516
United States
Phone: (917) 622-1079
weingartenaaron@gmail.com

| | |
|---|---|
| Invoice # | 119 |
| Date | Apr 30, 2018 |
| Due Date | Apr 30, 2018 |
| Total USD | $46,383.24 |
| Outstanding | $195,562.09 USD |

**Invoice To:**
DJ Direct Inc

| Products | Quantity | Unit Price | Amount |
|---|---|---|---|
| 1. Olaplex Salon Kit #1<br>ASIN: B01CO1MY2Y | 48.00 | $170.00 | $8,160.00 |
| 2. Olaplex Traveling Kit<br>ASIN: B00TUGVHHK | 126.00 | $55.74 | $7,023.24 |
| 3. Olaplex No. 3 Hair Perfector 3.3 oz | 2,496.00 | $12.50 | $31,200.00 |

| | |
|---|---|
| **Sub Total:** | **$46,383.24** |
| **Total USD:** | **$46,383.24** |
| **Amount Paid USD:** | **$0.00** |
| **Amount Due USD:** | **$46,383.24** |